UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JAMES ARNOLD LEWIS,

                Plaintiff,

v.                                          Case No. 21-cv-232-pp

NURSE YORK, RANDALL HEPP,
JOE FALKE, KEVIN CARR,
MAKDA FESSAHAYE, NURSE DOE,
DOE, Health Services Manager,
and MOON, Complaint Examiner ICE,

                Defendants.

---

## ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 3) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A

---

      James Arnold Lewis, who is confined at the Kettle Moraine Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 3, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 3)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA allows the court to let an incarcerated plaintiff proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1).

1

He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On March 8, 2021, the court ordered the plaintiff to pay an initial partial filing fee of $25.52. Dkt. No. 6. The court received that fee on March 26, 2021. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the fee over time in the manner explained at the end of this order.

**II.    Screening the Complaint**

    A.    Federal Screening Standard

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

During the events described in the complaint, the plaintiff was confined at the Waupun Correctional Institution; he says that he was placed in temporary lock up status in the segregation building on September 22, 2020. Dkt. No. 1 at ¶10. He alleges that on October 13, 2020, he received a memo from defendant Warden Hepp that stated:

> Unfortunately, last week we identified three positive cases of [COVID-19] among the population. By Friday that number was nine and this morning it was thirteen. The number of individuals in quarantine status has also risen significantly. Beginning on Wednesday and continuing next week we will be collecting samples for testing at the institution to identify any unknown positive cases.

3

> This will allow us to determine the best ways to limit potential spread of the disease and to ensure health care for those who need it.

Id. at ¶¶11-12. The next day, Waupun staff allegedly moved the plaintiff from TLU to a general population cell in the Northwest cell hall. Id. at ¶13. The plaintiff alleges that six days later, or on October 20, 2020, he and his new cellmate were tested for COVID-19. Id. at ¶14.

On October 25, 2020, defendant Nurse York allegedly informed the plaintiff and his cellmate that his cellmate had tested positive for COVID-19. Id. at ¶15. The plaintiff alleges that he asked York if he or his cellmate would be moving to another cell, but York told him that neither inmate would be moving since the plaintiff had already been exposed. Id. at ¶¶16-17. York also allegedly refused the plaintiff's request for disinfectant to clean his cell because he had already been exposed. Id. at ¶18. The plaintiff alleges that he informed York that he had a compromised immune system because he did not have a spleen and that he wanted her name if she was not going to him moved. York allegedly then gave the plaintiff her name. Id. at ¶18.[1]

The plaintiff alleges that he wrote to the Health Services Unit (HSU), defendant Warden Randall Hepp and defendant Security Director Joe Falke stating that he had gone on a hunger strike until they moved him from the cell. Id. at ¶¶20-22. According to the plaintiff, on October 26, 2020, Falke told the plaintiff that the information he provided had been forwarded to proper staff, and that they would continue to monitor him to ensure his safety. Id. at ¶24.

---

[1] The complaint contains two paragraphs numbered 18.

The plaintiff alleges that the next day, October 27, 2020, he saw Nurse Ahlborg (not a defendant) nearby assisting another inmate. Id. at ¶27. The plaintiff allegedly told Ahlborg that he was on the third day of a hunger strike because his cellmate had tested positive for COVID-19, he had had a splenectomy and staff had told him he would be monitored. Id. at ¶28. Ahlborg allegedly agreed that the plaintiff had a compromised immune system and told the plaintiff he would email his supervisor about the situation. Id. at ¶29. The plaintiff alleges that about five hours after speaking with Ahlborg, staff informed him that he would be moving to a single cell. Id. at ¶31.

The plaintiff states that from the morning of October 25 until the evening of October 27, 2020, he did not eat or drink so he would not need to use the toilet or sink because he could not sanitize them. Id. at ¶38.

The plaintiff alleges that York failed to perform a COVID-19 screening after he told her about his hunger strike and compromised immune system. Id. at ¶37. He states that she showed further indifference when she failed to provide him with cleaning supplies. Id. The plaintiff also alleges that defendant Nurse Doe failed to perform a COVID-19 screening, despite knowing that the plaintiff's cellmate tested positive and the plaintiff had a compromised immune system. Id. at ¶39. He also alleges that defendant Doe Health Services Manager failed to monitor the plaintiff and provide him with a COVID-19 screening, despite knowing of the plaintiff's hunger strike and his compromised immune system. Id. at ¶40. The plaintiff alleges that Hepp and Falke failed to have him moved and failed to ensure he would be provided with the proper cleaning

5

supplies, despite knowing that the plaintiff's cellmate tested positive for COVID-19. Id. at ¶41.

The plaintiff alleges that Hepp, Falke, defendant Kevin Carr, the Secretary of the Wisconsin Department of Corrections, and defendant Makda Fessahaye, the Administrator of Wisconsin Division of Adult Institutions, knew of a prior COVID-19 outbreak at Waupun in May 2020, yet they failed to plan and prepare for the possibility of another outbreak. Id. at ¶42. The plaintiff claims that because the institution had been on lock-down the week before he was moved into general population from TLU, there was a possibility that his new cellmate could have been positive for COVID-19 before the plaintiff was moved into the cell, because 397 incarcerated persons and thirty-two staff had tested positive. Id. at ¶43. He asserts that Hepp, Falke, Carr and Fessahaye knew about the importance of isolating inmates who had tested positive from those who had tested negative, yet they failed to keep those inmates separated or to come up with and implement an adequate plan that would keep those who had tested positive from those who had not. Id. at ¶43.[2]

The plaintiff alleges that defendant Moon, the institution complaint examiner, recommended dismissal of the plaintiff's offender complaint alleging that he had been housed with an inmate who tested positive for COVID-19. Id. at ¶¶44-48. He says that if Moon had contacted the CDC, DHS or the plaintiff's primary care provider, she would have known that his placement in a cell with a COVID-19 positive individual placed the plaintiff at serios risk for infection.

---

[2] The complaint contains two paragraphs numbered forty-three.

Id. at ¶53. He says that the recommendation to dismiss his offender complaint caused him to spend an extra day in a cell with COVID-19 inmate. Id. at ¶54.

The plaintiff claims that the defendants showed deliberate indifference when they left him housed with his cellmate for several days after the cellmate's test results came back positive for COVID-19, even after the plaintiff informed them that he had a compromised immune system. Id. at page 8. The plaintiff also claims that the defendants showed deliberate indifference when the plaintiff was moved from TLU to the general population without first testing inmates for COVID-19, when they knew there was an outbreak in the general population. Id. Finally, the plaintiff claims that the defendants showed deliberate indifference to other inmates who tested negative but were forced to be housed with COVID-19 positive inmates and asserts that his complaint should be accepted as a class action suit. Id.

For relief, the plaintiff seeks monetary damages as well as a permanent injunction preventing Waupun from housing inmates who test positive for COVID-19 with those who have tested negative and/or whose results are pending. Id. at 9.

    C.    Analysis

The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517,

7

526–27 (1984)). To demonstrate a violation of the Eighth Amendment, a prisoner must make two showings. "First, the deprivation alleged must be, objectively, sufficiently serious." Id. at 824 (quotations omitted). "For a claim . . . based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Id. The second requirement is that the prison official was deliberately indifferent "to inmate health or safety," id., meaning that he was both aware of and disregarded "an excessive risk to inmate health or safety," id. at 837.

The plaintiff has not alleged that he contracted COVID-19. But he does allege that after prison staff informed him that his cellmate had COVID, he did not eat or drink for three days, presumably so that he would not become infected. He alleges that Nurse York, Warden Hepp, Security Director Falke and Doe HSM knew he had a compromised immune system and that his cellmate had tested positive for COVID, yet they refused to move the plaintiff and refused to ensure he had cleaning supplies. These allegations suffice to state an Eighth Amendment claim at this stage.

The plaintiff cannot proceed on a claim against Moon, the institution complaint examiner. Prison officials who deny grievances "but who otherwise did not cause or participate in the underlying conduct" cannot be held liable under § 1983. See Owens v. Hinsley, 635 F.3d 950, 953 (7th Cir. 2011) (citing George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007)).

The plaintiff also alleges that Waupun staff Hepp and Falke as well as DOC Secretary and DAI Administrator Fessahaye should have had better

8

policies in place for dealing with a COVID outbreak. But administrators "do not have a free-floating obligation to put things to rights . . . ." Burks v. Raemisch, 555 F.3d 592, 595 (7th Cir. 2009). A warden "is entitled to relegate to the prison's medical staff the provision of good medical care." Id. (citing Durmer v. O'Carroll, 991 F.3d 64 (3rd. Cir. 1993); Johnson v. Doughty, 433 F.3d 1001, 1011 (7th Cir. 2006). The plaintiff's allegations do not sufficiently explain how these defendants were responsible for the lack of policies and procedures, which are largely medical in nature. He may not proceed on his claims against these defendants.

The plaintiff asks the court to treat his complaint as a class action. The plaintiff has not alleged that he satisfies the requirements of Federal Rule of Civil Procedure 23(a) for a representative plaintiff or alleged facts that would satisfy the requirements of class action. Under Rule 23(a), a plaintiff can sue as a representative of or on behalf of parties only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Because the plaintiff has not satisfied the requirements of Rule 23(a), the plaintiff may bring the claims only in his individual capacity and not on behalf of a class.

The plaintiff made no specific claims against Secretary Kevin Carr; it appears that the plaintiff included him only because Carr is the Secretary of the Department of Corrections. But government officials are liable only for their

9

Case 2:21-cv-00232-PP   Filed 05/24/22   Page 9 of 12   Document 7

own conduct; a supervisor is not liable for a subordinate's constitutional violation under the supervisor knew about the conduct and facilitated, approved, condoned or turned a blind eye to that conduct. Taylor v. Ways, 999 F.3d 478, 493-94 (citations omitted). The plaintiff has not stated a claim against Carr.

In sum, the plaintiff may proceed on an Eighth Amendment deliberate indifference claim against defendants Nurse York, Randall Hepp, Joe Falke, Nurse Doe and Doe HSM/HSU Manager, based on allegations that the plaintiff has a compromised immune system and the defendants failed to move him from his cell after his cellmate tested positive for COVID-19. After the named defendants file a responsive pleading to the complaint, the plaintiff may use discovery to identify the Doe defendants.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 3.

The court **DISMISSES** defendants Carr, Fessahaye and Moon.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendants York, Hepp and Falke. Under the informal service agreement, the court **ORDERS** those defendants to file a responsive pleading to the complaint within sixty days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$46.23** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to Warden at Kettle Moraine Correctional Institution.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are in custody at Prisoner E-Filing Program institutions[3] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are in custody at all other prison facilities must submit the original document for each filing to the court to the following address:

---

[3] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

THE PLAINTIFF MUST NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 24th day of May, 2022.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**